IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL KENDRICK, individually and as
Administrator of the Estate of Jonathan M.
Kendrick, and on behalf of all others similarly
situated,

                Plaintiff,

v.                                                  Case No.  25-cv-2287-JWB

AW DISTRIBUTING, INC., et al.

                Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on a motion to dismiss by all Defendants and a motion to strike Plaintiff's Rule 23 class action allegations. (Docs. 57, 58.) These motions were fully briefed before this case was transferred from the Western District of Missouri to the District of Kansas. (Docs. 57, 80, 87; 58, 62, 64.) Therefore, the motion has been ripe for some time.[1] However, upon receiving the transfer of this case, the court granted a stay pending a ruling from the Tenth Circuit in *Messerli v. AW Distributing, Inc.*, which delt with similar legal issues and questions. (Doc. 133.) The Tenth Circuit has recently issued its ruling in the *Messerli* case. *See Messerli v. AW Distrib., Inc.*, 153 F.4th 1077 (10th Cir. 2025). Considering the decision of the Tenth Circuit in *Messerli*, Defendants' motion to dismiss is granted and the motion to strike is denied as moot for the reasons stated herein.

**I.    Facts and Procedural History**

The following facts are taken from the allegations in Plaintiff's complaint. (Doc. 1.)

---

[1] After transfer to this district, the parties both filed supplemental briefing on the application of Tenth Circuit caselaw to the pending motions as opposed to Eighth Circuit caselaw. (Docs. 123, 130.)

1

Defendants in this case all are producers of chemical computer dusters. These computer dusters are pressurized aerosol cans that contain the chemical 1-1, Difluoroethane ("DFE"), which is an odorless gas listed as HFC-152a. (*Id.* at ¶ 9.) When inhaled, DFE causes intense and immediate intoxication. DFE is highly lipophilic, crosses the blood-brain barrier, directly affects the central nervous system, stimulates the gamma-aminobutyric acid ("GABA") receptors, and inhibits the N-methyl-D-aspartate ("NMDA") receptors, making it incredibly addictive. (*Id.* at ¶ 87.) Moreover, the inhalation of DFE can lead to cardiac arrest. (*Id.* at ¶¶ 5–7.) Given the widespread availability of computer dusters at many commercial retailers, their relatively cheap cost (as little as $1.89 per can), and its undetectability in workplace drug tests, DFE is a commonly abused substance by means of intentional inhalation. (*Id.* at ¶¶ 8–11.) This intentional inhalation is known colloquially as "huffing" and the individual who participates as a "huffer".

Although each Defendant sells their own brand of computer duster, all the computer dusters are identical in composition since they all are composed almost entirely of DFE and contain a bitterant known as denatonium benzoate ("DB"). (Doc. 1 at ¶ 19.) This bitterant is intended to deter huffing; however, Plaintiff contends that DB "has no meaningful impact because it is undetectable in the gas vapor phase" (*Id.* at ¶ 23), that 15–30% of the adult population has a genetic trait which renders them incapable of detecting the bitter taste (*Id.* at ¶ 25), and that DB actually increases the amount of DFE a huffer can take in since DB is bronchodilator which relaxes muscles in the lungs and widens the airways. (*Id.* at ¶ 26.) Plaintiff alleges that Defendant companies know of these problems with DB, and yet they continue to fraudulently warrant their products and mislead consumers. (*Id.* at ¶ 27–28.)

Plaintiff, Michael Kendrick, is the father of Jonathan M. Kendrick and administrator of Jonathan's estate. (Doc. 1.) He brings this case individually and on behalf of Jonathan Kendrick's

estate. Jonathan Kendrick first began inhaling computer dusters in 2011. (*Id*. at ¶ 57.) Even though he was a culinary student, Jonathan's DFE addiction consumed his life, and he inhaled products manufactured by Defendants on a weekly and sometimes daily basis. (*Id*. at ¶ 31, 56–57.) On September 25, 2022, Jonathan Kendrick was found dead in Room 143 at the Motel 6 in Overland Park, Kansas. Also, 35 cans of computer dusters were in the room with him when he died (and near his body), with 27 of those cans being empty. (*Id*. at ¶ 30, 59, 62.) His official cause of death was "acute 1,1-Difluoroethane toxicity." (*Id*. at ¶ 30, 62.)

On September 12, 2024, Plaintiff filed the present action in the Western District of Missouri individually, as the administrator of Jonathan's estate, and on behalf of a class of all other similarly situated individuals who had been injured or died from "DFE intoxication . . . arising from inhaling DFE-based liquid aerosol." (Doc. 1 at ¶ 163.) In his complaint, Plaintiff alleges 10 counts, including claims for strict products liability for design defect, failure to warn, manufacturing defects, negligence, wrongful death, survivorship, breach of express warranty, and punitive damages. After serving each Defendant with process, all Defendants filed joint motions to change venue to the District of Kansas, to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and to strike the complaint's Rule 23 class action allegations. (Docs. 55, 57, 58.) On May 21, 2025, Chief District Judge Beth Phillips of the Western District of Missouri granted the motion to change venue and transferred this case to the District of Kansas. (Docs. 93, 94.)

After transfer to this district had been completed, Defendants filed a motion to stay the case pending a decision from the Tenth Circuit in the case of *Messerli v. AW Distributing, Inc.* (Doc. 113.) In *Messerli*, the Tenth Circuit faced a challenge to an order by Judge Crabtree dismissing a class action complaint against manufacturers of chemical computer dusters by a victim of DFE

3

inhalation addiction under Kansas' illegality defense. *Messerli v. AW Distrib., Inc.*, No. 22-2305-DDC-TJJ, 2023 WL 4295365, at *6 (D. Kan. June 30, 2023), *aff'd*, 153 F.4th 1077 (10th Cir. 2025) (holding Kansas's illegality defense applies to plaintiff's claims because huffing DFE from computer dusters is a violation of Kan. Stat. Ann. § 21-5712). Defendants argued in their motion to stay that the Plaintiff in *Messerli* presented a "nearly identical lawsuit" to this action (*Id.* at 2), and that the decision in *Messerli* would likely be determinative of this case. (*Id.* at 5.) Although Plaintiff contested this motion, Magistrate Judge Mitchell granted the motion to stay on July 31, 2025. (Doc. 133.) After the Tenth Circuit issued its opinion in the *Messerli* case on September 3, 2025, the parties agreed that this case should remain stayed pending the undersigned's decision on Defendants' motion to dismiss. (Docs. 136, 137.) Although this motion was briefed prior to the Tenth Circuit's decision, Defendants move to dismiss on the grounds that Plaintiff's claims are barred by the illegality defense under Kansas law. (Docs. 57, 87.) Plaintiff opposes the motion, asserting instead that this action should be governed by Missouri law which means the illegality defense is not a complete bar to recovery. (Doc. 80.)

**II.     Standard**

To withstand a motion to dismiss under Rule 12(b)(6), the complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the motion to dismiss stage, the court accepts all well-pleaded allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Albers v. Bd. Of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 700 (10th Cir. 2014). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

**III.    Analysis**

    **A.  Choice of Law Between Missouri and Kansas**

When determining whether Plaintiff presents a proper claim, the court's first task is to determine the substantive state law which governs in this case.  Plaintiff contends that this court should apply Missouri state substantive law while Defendants argue instead that Kansas state substantive law should apply.

As an initial consideration, the court finds that there is a true conflict between the relevant Missouri state law and Kansas state law in this case.  Venue is proper for all Defendants in Kansas, and Defendants argue in their briefing that both Kansas and Missouri have outlawed huffing, which would prevent recovery in this case under the affirmative defense of illegality under either state law.  *See* Kan. Stat. Ann. § 21-5712; Mo. Ann. Stat. § 579.097.  Although both states recognize the affirmative defense of illegality, this affirmative defense in Kansas acts as a total bar to recovery whereas this affirmative defense in Missouri can only be used in comparative fault determinations.  *Compare Messerli v. AW Distrib., Inc.*, 153 F.4th 1077, 1079 (10th Cir. 2025) ("[u]nder Kansas law, tort claims are barred when the plaintiff's illegal act has a causal connection to his injuries"), *with* Mo. Ann. Stat. § 537.765 ("[a]ny fault chargeable to the plaintiff shall diminish proportionately the amount awarded as compensatory damages but shall not bar recovery.").  Thus, the choice of which state law to apply in this case will determine the outcome of Defendants' motion to dismiss, and a true conflict exists between the relevant state laws in this case.

Ordinarily, a federal court sitting in diversity in the Tenth Circuit applies the choice of law rules of the state in which it sits.[2]  *Anderson v. Com. Const. Servs., Inc.*, 531 F.3d 1190, 1193 (10th

---

[2] In this case, Plaintiff alleges diversity jurisdiction under 28 U.S.C. 1332, both in section (d) as a class action and sections (a) and (c) for the named Plaintiff.  (Doc. 1 at ¶ 54).

Cir. 2008). Kansas state law follows the *lex loci delicti* rule when dealing with multistate tort actions, and so the usual conclusion of federal courts in this district is to apply the law of the state where the tort occurred. *Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731, 735 (1985). However, when a case is transferred into a federal district under 28 U.S.C. § 1404(a) on a motion by the defendant, "the transferee court generally must use the choice-of-law rules that would have prevailed in the transferor court." *Gerson v. Logan River Acad.*, 20 F.4th 1263, 1270 (10th Cir. 2021). Given that Plaintiff initially filed this action in the Western District of Missouri, this court is bound to apply Missouri's choice-of-law rules to determine whether Kansas or Missouri law applies to the claims in this case.[3] "When a conflict of law exists, Missouri evaluates which law should govern according to the Restatement (Second) of Conflicts of Laws." *Rider v. The Young Men's Christian Ass'n of Greater Kansas City*, 460 S.W.3d 378, 388 (Mo. Ct. App. 2015). Although Plaintiff has pled ten counts in his complaint, there are ultimately three types of claims which he raises and as to which the court must determine the relevant choice of law: (1) product liability claims, (2) wrongful death claims, and (3) punitive damages claims.

First, with regards to product liability claims under Missouri state law:

> That branch of the law commonly called "products liability" is often spoken of as a unitary, coherent body of statute and precedent when in fact there are at least three common theories of recovery for damages sustained as a result of a defective product. In a "products liability" case, a plaintiff may seek recovery, as did this plaintiff, upon (1) a theory of negligence, . . . (2) a theory of "strict liability," . . . or (3) a theory of breach of warranty, either express or implied.

*Ragland Mills, Inc. v. Gen. Motors Corp.*, 763 S.W.2d 357, 359 (Mo. Ct. App. 1989). Therefore,

---

[3] The court notes that Chief Judge Phillips found that venue was not proper in the Western District of Missouri as to the MicroCenter Defendants. However, she ultimately transferred this entire matter for all Defendants under 28 U.S.C. § 1404(a). Additionally, MicroCenter Defendants did not contest personal jurisdiction in the Western District of Missouri prior to the transfer, which would have allowed this court to follow Kansas choice of law rules for them. *See*, *e.g.*, *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (applying transferee state choice of law when a transfer cures jurisdiction, even if the case was transferred under 28 U.S.C. 1404(a)). Thus, the same choice of law analysis applies to all Defendants even though venue was not proper as to the MicroCenter Defendants in the Western District of Missouri.

under Missouri state law, Plaintiff's claims for strict liability, negligence, and breach of warranty are all evaluated as the single tort of products liability even though they are distinct legal theories. In determining which state law applies to a tort action, Missouri choice of law principles ascribe to the most significant relationship test, taken from the Restatement (Second) of Conflict of Laws § 145. *Kennedy v. Dixon*, 439 S.W.2d 173, 184–85 (Mo. 1969) (en banc); *Thompson by Thompson v. Crawford*, 833 S.W.2d 868, 870 (Mo. 1992). This test looks at four factors under Section 145 in determining which state law to apply: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Livingston v. Baxter Health Care Corp.*, 313 S.W.3d 717, 721 (Mo. Ct. App. 2010). These factors are intended to refine and apply the general principles from Restatement (Second) of Conflict of Laws § 6 in a tort context. Restatement (Second) of Conflict of Laws § 145(2).

Second, regarding the wrongful death and survivorship claim, Missouri follows the Restatement (Second) of Conflict of Laws § 175, which states that "local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship." *State ex rel. Broglin v. Nangle*, 510 S.W.2d 699, 702 (Mo. 1974) (en banc). The Restatement goes on to say that "[i]n large part, the answer to this question will depend upon whether some other state has a greater interest in the determination of the particular issue than the state where the injury occurred." Restatement (Second) of Conflict of Laws § 175 cmt. d. It is important to note that place where the injury occurred is not necessarily the state where death occurred but rather is "where the force set in motion by the actor first takes effect on the person." Restatement (Second) of Conflict of

Laws § 175 cmt. b.

In applying the four factors from Section 145 and the choice of law rules from Section 175 to the facts of this case, the court finds that the state of Kansas has the most significant relationship to this case, and thus Kansas state law applies to all of Plaintiff's claims. In so finding, the court must first define the relevant "injury" at issue in this case. Given the facts in the complaint and the proposed class definition, it appears that Plaintiff alleges two separate injuries that Jonathan Kendrick suffered. The first is a specific injury of death from huffing, and second is a more general injury of addiction to DFE inhaled from computer dusters. These two types of injuries are further highlighted by the divergent briefing by the parties on the motion to dismiss, with Defendants arguing choice of law based on the location of Jonathan's demise and Plaintiff arguing choice of law based on Jonathan's life with DFE addiction. Nevertheless, under either definition of injury, Kansas law should apply to this case.

**1. If the relevant injury is defined as Jonathan's death, Kansas law applies.**

For purposes of choice of law analysis, if the relevant injury is defined as Jonathan's death, it is an uncontested fact that Jonathan Kendrick passed away in Overland Park, Kansas. This means that Section 145's first factor of the most significant relationship test regarding location of the injury weighs heavily in favor of applying Kansas law. The court also would find that the second factor of the "place where conduct causing the injury occurred" was also likely the same hotel in Kansas in which Jonathan died given the presence of the empty cans at the scene, which would also weigh heavily in favor of applying Kansas law.

As to Section 145's third factor regarding the domicile, residence, and place of business of the parties, this factor weighs in favor of Kansas law when the domicile of all parties are considered. To reach this conclusion, there is an important factual discontinuity which needs to

be addressed. In his complaint, Plaintiff pleads that Jonathan "was a citizen of Missouri at the time of his death and during all times while using Defendants' products." (Doc. 1 at ¶ 33, 56.) However, Defendants filed the records from Jonathan's state probate proceedings, which were filed in Johnson County, Kansas.[4] (Doc. 79-1.) In these proceedings, *In the Matter of the Estate of: Jonathan M. Kendrick*, No. 23-PR-586 (10th Jud. Dist., June 2, 2023), Plaintiff here was issued letters of administration regarding Jonathan Kendrick's estate under the Kansas Simplified Estates Act. Kan. Stat. Ann. § 59-3201 *et seq*. However, both the petition for the issuance of letters of administration and the order signed by District Judge Charles Droege granting that petition state that "at the time of [Jonathan M. Kendrick's] death[,] decedent was a resident of Johnson County, Kansas." (Doc. 79-1 at 1, 7.) The court therefore takes judicial notice of this discrepancy and finds that as to Jonathan's estate, this factual contradiction between the complaint here and Kansas state probate order supports neither Kansas nor Missouri for purposes of choice of law analysis. Moreover, the named Plaintiff in this case is Jonathan's father, and he brings this case individually and as Administrator of the Estate of Jonathan M. Kendrick. Therefore, insofar as the named Plaintiff has individual claims, his claims strongly support the application of Kansas law since he is himself a resident of Johnson County, Kansas. In a similar way, the domicile of all Defendants, except the MicroCenter Defendants, supports neither Kansas nor Missouri because all have store locations in both Kansas and Missouri. Nevertheless, regarding the MicroCenter Defendants, Kansas law is proper because it is the only state to properly have jurisdiction, as Chief Judge Phillips found in her order transferring this case to the District of Kansas. (Doc. 93 at 8–9.) Thus,

---

[4] "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979). However, when dealing with judicial notice of other court opinions and records in the context of a motion to dismiss, a court can "take judicial notice of the existence of the opinions of other courts but not the truth of the facts recited therein." *Gilchrist v. Citty*, 71 F. App'x 1, 3 (10th Cir. 2003). *See also Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 741 n.3 (10th Cir.), *cert. denied*, 144 S. Ct. 79 (2023).

choice of law for all the parties weighs in favor of Kansas in the aggregate.

As to Section 145's fourth factor regarding the place around which the relationship was centered, Jonathan died in Kansas surrounded by computer dusters that he likely huffed while in his hotel room in Overland Park, Kansas.  This fact weighs in favor of the application of Kansas law.  Therefore, defining the relevant injury as Jonathan's death leads the court to apply Kansas state substantive law based on the most significant relationship test for all product liability, and also apply Kansas state substantive law for wrongful death, and survivorship claims under Section 175.

2. **If the relevant injury is defined as Jonathan living with DFE addiction, Kansas law applies.**

If the relevant injury for choice of law analysis is defined as Jonathan living with DFE addiction that was enabled by Defendants, Kansas still has the most significant relationship and so Kansas state substantive law should apply.  The court will note that as established above, the facts pled in the complaint about Jonathan's residency at the time of his death appear to be contradicted by court filings in Johnson County Probate proceedings.  Therefore, the assertions pled by Plaintiff regarding the residency of Jonathan at the time of his death are not dispositive for choice of law analysis here.  Although the well-pled facts of the complaint are accepted as true for purposes of a motion to dismiss, the court must weigh all relevant factors in a choice of law analysis.

Moving to the Restatement (Second) of Conflict of Laws § 145 factors, Plaintiff does not plead exactly where Jonathan first became addicted to DFE; however, the complaint alleges that he purchased and abused chemical computer dusters for their DFE contents in both Missouri and Kansas. (Docs. 1, 80.)  This renders the first two factors regarding the place where the injury

10

occurred and where the conduct occurred, as well as the fourth factor regarding where the relationship is centered, in support of neither Kansas nor Missouri. Thus, the third factor is the most determinative for determining which state has the most significant relationship.

As noted above, there is a discrepancy between the complaint and the Kansas probate proceedings regarding the state in which Jonathan resided at the time of his demise. In the same way as above, this apparent contradiction weighs in favor of neither Kansas nor Missouri. Therefore, the court looks at the Kansas residency of the named Plaintiff in his individual standing and the residency of the MicroCenter Defendants, which weigh in favor of Kansas, to find that if the relevant injury is defined as addiction, Kansas law should be applied for all product liability, wrongful death, and survivorship claims.

Plaintiff in response to the motion to dismiss urges that in the event that the court finds that Kansas law applies, Restatement (Second) of Conflict of Laws § 6(2) policy factors would instead lead to the conclusion that Missouri law should be favored. (Doc. 80.) However, Plaintiff has not pled that Missouri policy concerns are so pervasive as to prevent the application of Kansas law here. Although he has pled Jonathan was a Missouri citizen at the time of his death, this fact alone, in combination with the other concerns about Jonathan's residency noted above, does not provide a sufficient policy justification to overcome the court's determination that Kansas law should apply to this case.

### B. Defendants' Motion to Dismiss

Under Kansas law, the illegality defense is a bar to a plaintiff's recovery. *Kansas City v. Orr*, 62 Kan. 61, 61 P. 397, 399 (1900). As recently noted by the Tenth Circuit, "[t]he illegality defense exists under Kansas common law, and absent abrogation by the Kansas Legislature or the Kansas Supreme Court, it is still good law." *Messerli v. AW Distrib., Inc.*, 153 F.4th 1077, 1079

(10th Cir. 2025). In a case with a set of facts that nearly mirrors our own, the Tenth Circuit held that Kansas' illegality defense was properly applied when granting a motion to dismiss claims involving the illegal huffing of DFE. *Id*. at 1088; Kan. Stat. Ann. § 21-5712. Given that the facts as pled in the complaint show that Jonathan "intentionally inhal[ed] computer duster" (Doc. 1 at ¶ 57) and also "developed an addiction to the DFE in Defendants' products and routinely used products manufactured by each of the Defendants" (*Id*. at ¶ 31), the court is bound to apply the illegality defense as invoked by Defendants and grant the motion to dismiss. Given that the complaint is dismissed, Defendants' motion to strike Plaintiff's class action allegations is rendered moot and thus denied.

**IV. Conclusion**

Defendants' motion to dismiss (Doc. 57) is GRANTED. Defendants' motion to strike Plaintiff's Complaint's Rule 23 Class Action Allegations (Doc. 58) is DENIED AS MOOT. IT IS SO ORDERED. Dated this 1st day of December, 2025.

        __s/ John W. Broomes_____
        JOHN W. BROOMES
        CHIEF UNITED STATES DISTRICT JUDGE